NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 07-11757 |
| | : | |
| SOLOMON DWEK, | : | Chapter 11 |
| | : | |
| Debtor | : | |
| | : | |
| CHARLES A. STANZIALE, JR., as Chapter 11 | : | |
| Liquidating Trustee of Solomon Dwek, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Adversary No. 09-1233 |
| | : | |
| BARRY KANTROWITZ, BARRY | : | |
| ASSOCIATES, LLC and BARRY | : | |
| ASSOCIATES TITLE AGENCY, LLC | : | **MEMORANDUM OPINION** |
| | : | Defendant's Motion for |
| Defendants. | : | Judgment on the Pleadings |
| | : | Document Number 71 |

## APPEARANCES

Attorneys for Plaintiff
Christopher S. Mayer, Esquire
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

Attorney for Defendants
Douglas J. McGill, Esquire
Law Office of Douglas J. McGill, LLC
382 Springfield Avenue - Suite 217
Summit, New Jersey 07901

The Defendants, Barry Kantrowitz, Barry Associates, LLC, and Barry Associates Title

Agency, LLC move for judgment on the pleadings as to certain counts[1] of the Third Amended

Complaint filed by the Trustee in the matter of Solomon Dwek et al.  The court took oral

argument on April 18, 2011.  The court also considered the Defendants' moving papers, the

Trustee's opposition, and the Defendants' reply.

By way of background, the Defendants filed a previous motion to dismiss based on the

Second Amended Complaint.  The Court denied that motion, but on a motion for reconsideration

asked the parties for further briefing on the issue of whether the *in pari delicto* defense was

applicable to Count VIII of the Second Amended Complaint.  After considering the further

submissions, the Court found that Count VIII (breach of contract) of the Second Amended

Complaint was barred by the *in pari delicto* defense.

The Trustee argues that this motion should be rejected because it is just a rehashing of

previous arguments that this court has rejected.  The Trustee states that in "granting the

Liquidating Trustee's cross-motion [to amend the complaint] and rejecting defendants argument

that the Liquidating Trustee's proposed amendments would be futile, the Court necessarily

determined the sufficiency of the Third Amended Complaint."  That argument fails as both a

matter of fact and law.  The Court granted the Trustee's cross-motion to amend the complaint in

an opinion issued August 4, 2010.  The Court did not rule on the *in pari delicto* defense until

---

[1]The motion seeks to dismiss the following counts: Counts III and IV (only as they relate
to Kantrowitz's membership interests in Corbett Holdings and Ocean Circle); Counts V through
X; Count XII (Promissory Estoppel); Count XIII (only as to contributions allegedly made by
Dwek on Kantrowitz's behalf); Count XIV; and Count XV (as to Barry Associates and Barry
Title only).

October 19, 2010; therefore, it is appropriate for the Defendants to explore what impact that

ruling has on other counts in the Third Amended Complaint.  More generally, the legal standards

for granting a motion to amend a complaint are quite different from the standards governing a

motion to dismiss, so it was not necessary for the court to rule on every legal issue in order to

allow the Trustee to file an amended complaint.  The Defendants should be given an opportunity

to test the legal sufficiency of any matters that are new to the Third Amended Complaint.  *See*, In

re NM Holdings Co., LLC, 407 B.R. 232 (Bankr. E.D. Mich. 2009) (if an amended complaint is

filed the defendant can file a new motion to dismiss).

The Defendants move pursuant to Rule 12© of the Federal Rules of Civil Procedure,

made applicable to thee proceedings through Federal Rule of Bankruptcy Procedure 7012, for a

judgment on the Third Amended Complaint.  This court has set out the legal standard for such

motions in its previous rulings.  Briefly, the standard the Third Circuit applies to such motions is:

> Under Rule 12©, judgment will not be granted unless the movant clearly
> establishes that no material issue of fact remains to be resolved and that he is
> entitled to judgment as a matter of law. In reviewing the grant of a Rule 12©
> motion, we must view the facts presented in the pleadings and the inferences to be
> drawn therefrom in the light most favorable to the nonmoving party.

Andela v. The American Ass'n For Cancer Research, 2010 WL 2893625, 2 (3d Cir. 2010)

(quoting Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)).

The Court has previously dismissed the breach of contract count [the first of two Count

XIIs in the Third Amended Complaint].  That count provided that

"[u]nder the terms of the agreement with Kantrowitz, Dwek was to receive an interest in Barry Associates and a fifty-percent share of the net earning from the business. Kantrowitz also agreed to provide Dwek with an interest in Barry Title and a fifty-percent share of the earnings from the business. From 2001 to date, Kantrowitz, Barry Associates, and Barry Title breached these agreements by not giving Dwek his fifty-percent share of the net earnings from the businesses."

*Third Amended Complaint* ¶ 186-88. At the time the Trustee filed his Third Amended Complaint and included counts based on promissory estoppel and unjust enrichment, the Court had not yet issued its opinion on the *in pari delicto* defense. Now that the Trustee has the benefit of knowing the Court's reasoning on the application of that defense, however, it is unfathomable that he would argue that he still has equitable causes of action based on an agreement the Court found to be unenforceable.

The unjust enrichment count  [the second Count XII in the Third Amended Complaint] states that "Kantrowitz promised that Dwek would receive an interest in Barry Associates and a fifty-percent share of the net earnings from the business and that Dwek would receive an interest in Barry Title and a fifty-percent share in the net earnings from the business." *Third Amended Complaint* ¶ 190. So it is based on the <u>exact</u> same promises that the Court found unenforceable based on *in pari delicto*. Despite that, the Trustee argues in his brief that

"defendants have not shown that the Liquidating Trustee is seeking to recover under an illegal agreement. Rather, the Liquidating Trustee is entitled to damages under his promissory estoppel claim to avoid detrimental injury and injustice. The injustice is clear: If Dwek, acting on Kantrowitz's reliance, had not closed down his own brokerage and sent all real-estate transactions to Kantrowitz and his companies, he would have received considerable commissions and fees that would be available now to satisfy his creditors."

*Trustee brief in opposition* at 13.  The Trustee advanced that same argument in opposition to the

Defendants' motion for reconsideration and the Court rejected it.  This Court stated in its

opinion:

> In the Third Amended Complaint the Trustee alleges that the agreement to give
> Dwek a 50% interest in Barry Title and Barry Associates was in consideration for
> Dwek agreeing to close his real estate business, Better Properties.  Courts hold
> that it is improper for a plaintiff to amend a complaint to omit an allegation made
> in the original complaint which would defeat its claim "without a legitimate
> explanation for its previous inclusion, such as it having been the result of mistake
> or inadvertence." WestLB AG v. TPS McAdams, LLC (In re Enron Corp.), 370
> B.R. 583, 597-98 (Bankr. S.D.N.Y. 2007).  The Trustee has not provided any
> plausible explanation for his change of position here.  If the closing of Better
> Properties was the sole reason for the agreement to split profits then Dwek was
> certainly aware of that prior to the filing of the amended complaint (it was closed
> in 2001) and common sense would dictate that it would have been in his
> certification.  Instead, in his certification in support of the cross-motion to amend
> Dwek certified that:
>> 20. The Dwek-Kantrowitz relationship did not end with bribing
>> public        officials. Kantrowitz helped me defraud Jack Adjmi
>> ("Adjmi") and Joseph Dwek  ("Joseph"). In these transactions,
>> Kantrowitz was paid brokers' commissions and consulting fees for
>> real estate closings in which he was not the broker and did no
>> consulting. I convinced Joseph and Adjmi that Kantrowitz was
>> involved and a part of the cost of these deals. However, these
>> Adjmi and Joseph deals had other brokers legitimately involved in
>> the deals . . . .
>> 21. I included Kantrowitz in these transactions and encouraged
>> Adjmi and Joseph to make these payments as a means for me to
>> obtain money from Adjmi and Joseph. I and Kantrowitz agreed
>> that these payments to Kantrowitz would be split 50-50 among the
>> two of us. Kantrowitz, however, never shared any of these monies
>> with me.
> *See*, Certification of Solomon Dwek dated July 7, 2010 (Docket No. 6635 in case
> no. 07-11757).  In addition, in support of his cross-motion to amend the
> complaint, the Trustee states that the amendments "do not change any facts; they
> merely clarify the form of the transaction in which Mr. Dwek was to receive a
> portion of Barry Associates and Barry Title."  Finally, the Third Amended
> Complaint still on its face refers to the Barry Associates and Barry Title

agreements as frauds at ¶ 63.   So the Court flat out rejects the Trustee's argument that no facts supporting an *in pari delicto* defense are apparent on the face of the complaint.

10/19/10 *Oral Opinion on Motion for Reconsideration*.

In further defense of the promissory estoppel and unjust enrichment claims, the Trustee argues: "As with the Liquidating Trustee's claims relating to the LLCs, Kantrowitz has total control over Barry Associates and Barry Title Agency. The Liquidating Trustee alleges Kantrowitz agreed to provide Dwek a share in these companies, but Dwek cannot possibly stand in equal fault with Kantrowitz with respect to these companies, as he never had any control over them whatsoever." *Trustee brief in opposition* at 14.   That argument was also considered and rejected by the Court in deciding the motion for reconsideration, to wit:

> The Trustee in his supplemental brief states that the only wrongful conduct
> alleged is Kantrowitz's failure to honor the agreement to share profits.  Such an
> argument is myopic to the point of absurdity.  The profits that were supposed to
> be shared were to come, at least in part, from fraudulent brokers commissions
> obtained from defrauding Joseph Dwek and Jack Adjmi.  If the closing of Better
> Properties was a further inducement for Kantrowitz to share profits with Dwek
> that does not change the fact that not all the profits were legitimate.  It is
> immaterial whether Dwek exercised any control over Barry Associates or Barry
> Title.

10/19/10 *Oral Opinion on Motion for Reconsideration*.

The Court also previously addressed the argument that the counts should be allowed to stand to prevent a clear injustice.  As much as this court would prefer not to reward a complicit party, binding Third Circuit precedent holds that the *in pari delicto* defense applies to causes of action brought by a bankruptcy trustee.  *See*, Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340 (3d Cir. 2001).  As this court explained in its previous opinion:

Trustee states that he "should be allowed to 'follow the money,' especially where the Debtor, Dwek, does not stand to recover and only the creditors will benefit from the fruits of the Liquidating Trustee's labor." Not only does that appeal fly in the face of binding Third Circuit precedent, but it has also been rejected by other bankruptcy courts. A similar request was made by the trustee in Claybrook v. Broad & Cassel, P.A. (In re Scott Acquisition Corp.), 364 B.R. 562 (Bankr.. D. Del. 2007). The court noted that the six circuit courts that had considered the issue make it clear that there is no basis in the Bankruptcy Code for negating what is a clearly a valid affirmative defense under state law. The court noted that it was "sympathetic to the notion that it is not good policy to bar innocent trustees and reward guilty third parties under the in pari delicto doctrine" but by the same token courts cannot "turn a blind eye to the laws actually written by Congress out of misguided fealty to the imagined policies informing it." The Court understands that this may be a bitter pill for the Trustee to swallow, but Dwek made this particular bed and now the Trustee must lie in it.

10/19/10 *Oral Opinion on Motion for Reconsideration*. Accordingly, the Court will grant the motion to dismiss with regard to the promissory estoppel [second Count XII] and unjust enrichment count [Count XIV] of the Third Amended Complaint. *See*, OCA, Inc. v. Hodges, 615 F. Supp.2d 477 (E.D. La. 2009) (all claims based on an illegal relationship - including promissory estoppel and unjust enrichment - are barred). Once those counts are dismissed, it follows that the Court must also dismiss Count X, which seeks turnover of Dwek's share of the net earnings of Barry Associates and Barry Title.

An alternative ground for dismissal of Count X is that a request for turnover under § 542 is not an independent cause of action. That section merely provides the statutory authority for a trustee to collect property of the estate that may be in the possession of third parties. If title to property is in dispute, then a trustee must have an independent legal basis for proving his entitlement to that property. Guiliano v. Fairfield Group Health Care Centers, L.P. (In re Lexington Healthcare Group, Inc.), 363 B.R. 713, 716 (Bankr. D. Del. 2007) ("Where there is a

legitimate dispute about the ownership of property a trustee seeks to recover, turnover under

section 542 is not appropriate."). Since the underlying theories for why the Trustee should be

entitled to turnover (unjust enrichment and promissory estoppel) have been rejected, Count X

cannot stand.

Count IX seeks turnover of two types of estate property: "Fraudulent Fees" and

"Funneled Commissions". *Third Amended Complaint* ¶ 171-72. The term "Fraudulent Fees" is

defined in paragraphs 24 and 25 of the Complaint as the "total commissions that Kantrowitz and

Barry Associates received from these transactions [which] often exceeded 20% of the sales price,

and sometimes were greater than 25%. There were a number of such transactions where

Kantrowitz/Bary Associates/Barry title were paid exorbitant fees that amounted to a [sic] more

than four (4) million dollars (the "Fruadulent Fees")." *Third Amended Complaint* ¶ 24-25. The

transactions referenced were real estate investments in which "Dwek told J. Adjmi and J. Dwek

that Kantrowitz/Barry Associates/Barry Title was either one of the brokers and/or a consultant

on the transaction notwithstanding that Kantrowitz/Barry Associates/Barry Title was in reality

neither a broker nor a consultant on these transactions (the "Third Party Fraudulent

Transactions")." *Third Amended Complaint* ¶ 24. The Court is at a loss to understand how the

"Fraudulent Fees" are materially different from the profits generated by Barry Associates. The

Court assumes the difference in the Trustee's mind must be that Barry Associates had some

legitimate business transactions as well as the Third Party Fraudulent Transactions, but the

Trustee has failed to demonstrate how that changes the analysis. The fees generated from the

fraudulent real estate transactions are part and parcel of the same fraudulent agreement between

Dwek and the Defendants that the court found unenforceable, just as the court has already found

that Dwek's decision to close his brokerage firm and send all the business to Barry Associates

was an integrated part of the unenforceable fraudulent agreement.  Accordingly, the court will

dismiss Count IX to the extent that it seeks turnover of the "Fraudulent Fees".

The request for turnover of the "Funneled Commissions" is even less clear.  Although it

is capitalized in Count IX, as if it were a defined term, such definition appears no where in the

Third Amended Complaint[2].  In paragraph 53 there is a definition of "Funneled Cash" but it is

unclear if that is merely careless drafting by the Trustee or if "Funneled Cash" and "Funneled

Commissions" are materially different terms.  The Trustee's brief does little to shed light on the

issue.  If "Funneled Commissions" refer to the inflated commissions that the Defendants

received in connection with the Third Party Fraudulent Transactions, then the above analysis

applies and the request for turnover of the "Funneled Commissions" is denied.

If the terms are different, then the Court must address the Defendants' argument that

any attempt to avoid the "Funneled Cash" under a fraudulent transfer theory is time-barred.

The Complaint alleges that "after the filing of the original complaint in this matter, Dwek

disclosed that he had funneled an additional approximately $2 million to Kantrowitz on other

real-estate transactions involving Dwek properties, in which Kantrowitz did not have any

involvement, as a way of getting Kantrowitz additional money to safeguard for Dwek in addition

to the Hidden Cash in case Dwek ever needed the money (the "Funneled Cash")." *Third*

---

[2]"Funneled Commissions" also appears in ¶ 63 of the Third Amended Complaint but
without definition.

*Amended Complaint* ¶ 53.  In Counts V through VIII of the Complaint the Trustee advances

actual and fraudulent transfer theories for the return of "all other fraudulent transfers" made to

Kantrowitz.  Those counts are unchanged from the Second Amended Complaint.  What is new to

the Third Amended Complaint, however, are the allegations regarding the "Funneled Cash" in

paragraph 53.

The Defendants argue that since paragraph 53 expressly indicates that the "Funneled

Cash" allegations were not mentioned in the original complaint, this cause of action does not

relate back to the filing of the original complaint, and is time-barred under § 546(a) because it

was not brought within two years of the commencement of the bankruptcy case.  Federal Rule of

Civil Procedure 15© governs relation back of amendments and provides that a pleading relates

back to the date of the original pleading when "the amendment asserts a claim or defense that

arose out of the conduct, transaction or occurrence set out - or attempted to be set out - in the

original pleading." *Fed. R. Civ. Pro.* 15(c)(1)(B).  The Third Circuit has explained that

"amendments that restate the original claim with greater particularity or amplify the factual

circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding

pleading fall within Rule 15©." <u>Bensel v. Allied Piolots Ass'n</u>, 387 F.3d 298, 309-10 (3d Cir.

2004).

In Point V of his brief, the Trustee argues that this issue should not be considered

because this court in its August 4, 2010 opinion decided to grant the Trustee leave to file the

Third Amended Complaint despite the Defendants' arguments that several of the claims the

Trustee sought to add did not relate back and would be time-barred.  As previously stated, the

standards for judgment on the pleadings are very stringent and the standards for amending a

complaint are very liberal so it is not accurate to state that this Court, in its August 4, 2010

opinion, necessarily decided the validity of all of the counts in the Third Amended Complaint.

More importantly, the facts in paragraph 53 are new to the Third Amended Complaint and the

previous opinion addressed dismissal of the Second Amended Complaint.

The Trustee asserts that the avoidance of the "Funneled Cash" relates back to the

amended complaint because "the Amended Complaint alleged that Dwek had used Barry

Associates as the broker on all of his real-estate transactions in New Jersey and that Kantrowitz

had collected commissions on such transactions; the Third Amended Complaint simply clarifies

that many of those commissions were funneled to Kantrowitz in connection with deals in which

Kantrowitz had no involvement." The Trustee's argument misses the point; it does him no good

to argue that the Third Amended Complaint relates back to the Second Amended Complaint

because the Second Amended Complaint was filed after the two year period[3]. The new factual

allegations would have to relate back to the original complaint. The Defendants respond that the

only transfers described in the original complaint relate to fees and commissions in connection

with the Third Party Fraudulent Transactions and such transactions are necessarily different from

the new allegations.

_____

[3]The Trustee filed this adversary proceeding as the Chapter 11 Trustee of Solomon
Dwek. The Solomon Dwek bankruptcy case was filed as an involuntary petition on February 9,
2007. The two year limitations period in § 546 runs from the entry of the order for relief. The
order for relief in the Solomon Dwek bankruptcy was entered on February 13, 2007 when the
case converted to a voluntary Chapter 11 case. The Second Amended Complaint was not filed
until February 27, 2009.

The Trustee's relation back argument rests on a slender reed.  Many courts have,

however, read Rule 15(c) expansively.  Numerous courts have found that additional fraudulent

transfers relate back where the language of the complaint was broad enough to capture the

additional transfers or there was language that indicated an intent to recover and avoid all

transfers. *See, e.g.,* Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom

Corp.), 327 B.R. 711, 717 (Bankr. D. Del. 2005) (allowing an amendment to relate back where

the original complaint referred generally to additional transfers and the amended complaint

clarified that general reference and specifically identified the additional transfers).  Since this is a

motion for judgment on the pleadings, the Court must view all facts in the light most favorable to

the non-moving party.  With that standard in mind, it is possible for the court to find that the

allegations in the original complaint about the relationship between Dwek and Kantrowitz and

the formation of Barry Associates are general enough to encompass later revelations about the

full parameters of that relationship.  As one court noted, "[i]f the original complaint indicates an

intention to pursue all transfers, the addition of transfers will relate back, but where the

additional transactions are truly separate and do not arise from a common core of operative facts,

the amendment should not be allowed.".  Gordon v. Slaughter (In re Slaughter Co. & Assocs.),

242 B.R. 97, 103 (Bankr. D. Ga. 1999).  So, if the facts are as the trustee alleges them - that the

Funneled Cash is simply part of the real estate commissions - then the allegations in paragraph

53 "arise from a common core of operative facts" and the amendment should be allowed.  Id. at

103.  *See also*, Grella v. Zimmerman ( In re Art & Co., Inc.), 179 B.R. 757, 763 (Bankr. D.

Mass. 1995) (finding that facts alleged in the original compliant gave defendant fair notice that the

trustee was challenging payments throughout the course of defendants' relationship with the

debtor).  The Court cannot find that Counts V through VII meet the standards for a motion for

judgment on the pleadings.

Finally, the Defendants also seek dismissal of Counts III, IV, VIII, XIII and XV.  The

legal basis for a judgment on the pleadings as to those counts is not specifically addressed in the

Defendants' brief, nor was it addressed at oral argument.  Those counts are unchanged from the

Second Amended Complaint and do not appear on their face to be affected by the *in pari delicto*

ruling.  To the extent that Defendants sought to rely on previous arguments regarding those

counts, the court finds no basis to revisit its prior ruling.  The motion will be denied as to those

counts.

## Conclusion

The Defendants' motion for judgment on the pleading is granted in part and denied in

part, as follows:

I) Counts III, IV, VIII, XIII and XV denied;

ii) Counts V - VII denied;

iii) Count IX dismissed;

iv) Count X dismissed;

v) Count XII (Promissory Estoppel) dismissed;

vi) Count XIV dismissed.

Defendants' counsel should submit a form of order in accordance with this opinion.


/s/ *Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge


Dated: April 27, 2011